IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal Action No. 5:19-cr-00015 |
| v. | ) | |
| | ) | By:  Elizabeth K. Dillon |
| CARL WILLIAM MORRIS II | ) | United States District Judge |

**MEMORANDUM OPINION AND ORDER**

Defendant Carl William Morris II, proceeding *pro se*, filed a motion for compassionate release due, in part, to COVID-19.  (Dkt. No. 53.)  On February 21, 2023, pursuant to Standing Order 2019-1, the court appointed the Federal Public Defender to represent Morris.  (Dkt. No. 54.)  On March 3, 2023, the FPD filed a notice of no additional filing in support of Morris's motion.  (Dkt. No. 59.)  On the same day, Morris filed a pro se motion for leave to file a supplemental brief.  (Dkt. No. 58.)  The government responded to the motion for compassionate release on March 13 (Dkt. No. 60), and Morris filed a reply on March 23 (Dkt. No. 63).  Morris subsequently filed a letter supplementing with additional authorities (Dkt. No. 65), which the court also has considered.

For the reasons stated below, the court will grant Morris's motion to file a supplemental brief but will deny his motion for compassionate release.

## I.  BACKGROUND

In 2019, Morris pled guilty to one count of armed robbery and one count of discharging a firearm during and in relation to a crime of violence.  He was sentenced to 138 months in prison.

On January 18, 2019, Morris entered the Martins Food grocery store pharmacy located in Winchester, Virginia.  Morris approached a pharmacy clerk at the cash register in the pharmacy with a drug test kit to purchase.  While the clerk was ringing up the purchase, Morris brandished

a firearm, lifting the left side of his front jacket where he had a black handgun tucked in his waistband.  Morris directed the clerk to give him "all your pain meds."  The clerk complied and handed over multiple bottles of controlled substances, including oxycontin, valued at over $2,000.  Morris took four of the bottles and fled the store.  Another pharmacy clerk followed Morris out of the store.  Upon seeing the clerk, Morris discharged his firearm towards the clerk, but the clerk was unscathed.  After firing his weapon, Morris fled into a nearby wooded area where he was tracked by a police canine and apprehended by law enforcement.  Police recovered Morris's firearm and the stolen pills.  (*See* Statement of Facts, Dkt. No. 35.)

Morris, who is in custody at FCI Fort Dix, New Jersey, seeks compassionate release due to his obstructive sleep apnea.  Morris notes that he has been unable to procure a CPAP machine while in prison, resulting in inadequate sleep.  Morris further argues that this condition enhances his risk of severe illness were he to contract COVID-19.  In his supplemental brief, he indicates that his rehabilitative efforts entitle him to relief.[1]  And in his latest supplement (Dkt. No. 65), Morris discusses the Fourth Circuit's recent decision in *United States v. Brown*, 78 F. 4th 122 (4th Cir. 2023).

## II.  ANALYSIS

### A.  Compassionate Release Under the First Step Act

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(1) provides a statutory vehicle to modify a defendant's sentence under certain circumstances.  As

---

[1]  Morris's original motion discusses his clean disciplinary record and rehabilitation efforts, as well, but only in the context of discussing the 18 U.S.C. § 3553 factors.

amended by the First Step Act and in pertinent part,[2] the statute provides that the court may not

modify a term of imprisonment once it has been imposed except that:

> (A) the court, upon motion of the Director of the Bureau of
> Prisons, or upon motion of the defendant after the defendant has
> fully exhausted all administrative rights to appeal a failure of the
> Bureau of Prisons to bring a motion on the defendant's behalf or
> the lapse of 30 days from the receipt of such a request by the
> warden of the defendant's facility, whichever is earlier, may
> reduce the term of imprisonment (and may impose a term of
> probation or supervised release with or without conditions that
> does not exceed the unserved portion of the original term of
> imprisonment), after considering the factors set forth in section
> 3553(a) to the extent they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a
> reduction . . . .

18 U.S.C. § 3582(c)(1)(A)(i).  If a court finds extraordinary and compelling reasons for release,

it must also consider the 18 U.S.C. § 3553(a) factors in deciding whether to exercise its

discretion to reduce the defendant's sentence.  *United States v. High*, 997 F.3d 181, 186 (4th Cir.

2021).

In addition to satisfying the above, the reduction must be "consistent with [the] applicable

policy statement[] issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1).  With regard

to this requirement, "the Commission has yet to issue a policy statement that applies to motions

filed by defendants under the recently amended § 3582(c)(1)(A)."  *United States v. Burnell*, 837

F. App'x 223, 224 (4th Cir. 2021) (quoting *United States v. McCoy*, 981 F.3d 271, 280–83 (4th

---

[2] Prior to the First Step Act of 2018, only the Bureau of Prison could seek relief in court under the statute. The First Step Act changed the statute to allow a federal inmate to file a motion for compassionate release directly with the court after exhausting his administrative remedies.

Cir. 2020)).[3]  Therefore, at this time, a court may "consider *any* extraordinary and compelling

reason for release that a defendant might raise."  *Id.* (quoting *McCoy*, 981 F.3d at 284 (italics in

original)).  The court may, nonetheless, look to U.S.S.G. § 1B1.13 for guidance.  *McCoy*, 981

F.3d at 282 n.7.  Indeed, the Fourth Circuit has noted that the guideline provides examples and,

at least in the medical context, defines "the same substantive term that applies to BOP-filed

motions," *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021) (italics omitted).

Section 1B1.13, in describing the types of "extraordinary and compelling reasons" that

might warrant a reduction in sentence, specifically refers to certain medical conditions.  These

include circumstances where the defendant is: (1) suffering from a terminal illness; or (2)

suffering from a condition—a serious physical or medical condition, cognitive impairment, or

deteriorating physical or mental health because of aging—that "substantially diminishes the

[defendant's ability] to provide self-care within the environment of a correctional facility and

from which he or she is not expected to recover."  U.S.S.G. § 3B1.13, Note 1(A).  As noted, this

commentary is not controlling, but it does provide guidance.

As the movant, "[a] defendant seeking compassionate release has the burden of

establishing that such relief is warranted."  *United States v. Edwards*, 451 F. Supp. 3d 562, 565

(W.D. Va. 2020); *see also United States v. Hargrove,* 30 F.4th 189, 195 (4th Cir. 2022) (noting

the information provided by the inmate "to carry his burden of demonstrating that his medical

conditions served as an extraordinary and compelling reason for release"); *United States v.*

*Brewington*, No. 2:12CR00009-007, 2019 WL 3317972, at *2 (W.D. Va. July 24, 2019); *United*

---

[3]  As recently recognized by Judge Lauck of the Eastern District of Virginia, the Commission has submitted
its 2023 Amendments to the Guidelines.  Those proposed amendments currently are subject to Congress' 180-day
review period and will only become effective on November 1, 2023, if Congress does not take action to the contrary.
*See United States v. Rives*, No. 3:13cr175, 2023 WL 4976192, at *7–*8 (E.D. Va. Aug. 3, 2023) (explaining process
and describing the proposed amendments), appeal docketed, No. 23-6787 (4th Cir. Aug. 14, 2023).  The proposed
amendments describe certain medial circumstances and family circumstances that would constitute extraordinary
and compelling reasons for release.  *See id.* at *8.

*States v. Weaver*, No. 1:17-CR-235, 2020 WL 4810123, at *2 (E.D. Va. Aug. 18, 2020) (citing

*Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56–57 (2005) (defendant bears burden as party

seeking relief absent statutory guidance to the contrary)).  Compassionate release is "an

extraordinary and rare event."  *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo.

2019).

## B.  Exhaustion

An inmate is required to either fully exhaust all administrative remedies or show the lapse

of 30 days from receipt of the request by the warden, whichever is earlier.  18 U.S.C.

§ 3582(c)(1)(A).  Under the first condition, if the warden denies the request within 30 days, the

inmate then must exhaust his or her administrative remedies.  The second method of exhaustion

is only available if the warden fails to respond within 30 days.  *See, e.g.*, *United States v. Raia*,

954 F.3d 594, 597 (3d Cir. 2020); *United States v. Gomez*, No. 1:17CR71-1, 2021 WL 3612269,

at *2 (N.D.W. Va. Aug. 13, 2021); *United States v. Jones*, No. 5:13-cr-00025, 2021 WL

3288355, at *2 (W.D. Va. Aug. 2, 2021).

Morris submitted two requests for compassionate release to the warden at FCI Fort Dix.

In the first, dated March 23, 2021, Morris cites his mother's failing health as grounds for release.

He did not mention his health.  (Ex. C, Dkt. No. 53-4.)  In his second request, Morris cited

several health issues, such as high cholesterol, shortness of breath, hypertension, and a hernia.

Morris also mentioned his sleep apnea, but he did not focus on that issue as he does in the instant

motion, and he did not link any of his health issues to the risk associated with contracting

COVID-19.  (Ex. E, Dkt. No. 53-6.)  Both requests were denied by the warden.

The government argues that Morris did not exhaust his administrative remedies because

neither of his requests provided adequate notice of the primary issue he now advances in federal

court: his sleep apnea and the corresponding risk of contracting COVID-19.  Courts have taken

different approaches to "issue exhaustion" in the context of § 3582(c)(1)(A) compassionate

release motions.  *Compare, e.g.*, *United States v. Fennell*, 570 F. Supp. 3d 357, 361 (W.D. Va.

2021) (collecting district court cases from the Fourth Circuit and elsewhere finding that

§ 3582(c)(1)(A) "does not require issue exhaustion); *with United States v. Hartwell*, Criminal

No. 3:00cr72, 2022 WL 2161047, at *2 (E.D. Va. June 15, 2022) (recognizing that an inmate is

"required to present the same or similar ground for compassionate release in a request to the

Bureau as in a motion to the court" because "any other approach would set at naught the

exhaustion requirement specified by Congress") (citing and quoting *United States v. Williams*,

987 F.3d 700, 703 (7th Cir. 2021)).

Because it does not affect the court's decision on the motion, the court will assume that

Morris fully satisfied § 3582(c)(1)(A)'s exhaustion requirement, including with respect to his

argument based on his sleep apnea and COVID-19.

## C.  Extraordinary and Compelling Reasons

The fact that COVID-19 exists and that there is a possibility that someone may contract it

in a prison is insufficient, in and of itself, to grant a motion for compassionate release.  *See Raia*,

954 F.3d at 597.  Rather, in the context of COVID-19,

> the threshold questions are whether [the inmate] has a particularized risk of
> contracting COVID-19 in prison and whether his medical conditions render him
> particularly susceptible to severe illness or death should he contract the virus.
> *See High*, 997 F.3d at 185 (explaining that arguments for compassionate release
> "based on the coronavirus pandemic depend at least on allegations that the risk of
> contracting COVID-19 in a prison is higher than the risk outside the prison and
> that the inmate's preexisting medical condition increases that individual's risk of
> experiencing a serious, or even fatal, case of COVID-19").

*United States v. Youngblood*, 858 F. App'x 96, 98 (4th Cir. 2021).

Morris's medical records indicate that he was scheduled for an in-house sleep study on March 7, 2023.  (*See* Ex. A at 3, Dkt. No. 60-1.)  Thus, his sleep apnea is being addressed in prison, and Morris has not demonstrated that this care will be insufficient. Morris has also been vaccinated for COVID-19.  (*See* Dkt. No. 53-8 at 2.)  As a result, his health condition is no longer in the category of risk constituting an "extraordinary and compelling" circumstance to justify compassionate release.  *See, e.g.*, *United States v. Gerald*, No. 5:18-CR-204-D-6, 2021 WL 5283293, at *3 (E.D.N.C. Nov. 12, 2021); *United States v. Sidhu*, Criminal Case No. 1:14-cr-00399 (RDA), 2021 WL 2894723, at *5 (E.D. Va. July 9, 2021) (noting that because the defendant received the COVID-19 vaccination, he "faces reduced risks from the virus, further weighing against his request for compassionate release").  A risk of infection, alone, is insufficient to show extraordinary and compelling reasons.  *See, e.g.*, *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) ("And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced" so that "an inmate largely faces the same risk from COVID-19 as those who are not incarcerated."); *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); *United States v. Baeza-Vargas*, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases and noting consensus of district courts that have ruled that receiving a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"); *United States v. Luna*, No. 7:16-CR-11-D-1, 2021 WL 5828034, at *3 (E.D.N.C. Dec. 7, 2021) (collecting cases showing the "growing consensus" of district courts denying compassionate release when an inmate is vaccinated against COVID-19).

In his supplemental brief (Dkt. No. 58-1), Morris relies on *United States v. Salliey*, Criminal Action No. RDB-10-0298, 2023 WL 1970491 (D. Md. Feb. 13, 2023). In *Sailley*, the court concluded that the severity and disproportionality of the defendant's sentence relative to the offense, the substantial time he had already served, and his strong evidence of rehabilitation were "collectively sufficient" to provide a basis for a sentence reduction. *Id.* at *3. Thus, the court construes Morris's supplemental brief as suggesting that his rehabilitation is an "extraordinary and compelling" reason for relief.

First of all, rehabilitation, standing alone, "shall not be considered an extraordinary and compelling reason" for a sentence modification. 28 U.S.C. § 994(t). To the extent that rehabilitation is appropriately considered as something that—at least in conjunction with other factors—can constitute an extraordinary and compelling reason under § 3582, the court has considered Morris's efforts at rehabilitation, commends him for them, and encourages him to continue with those efforts. He states that he "has served his sentence blemish free, completed numerous programs, and has received outstanding performance reports in his previous position as an office worker in facilities." (Mot. 9, Dkt. No. 53; *see also* Dkt. No. 53-2 (containing a list of the classes and programs he has completed, referencing his "outstanding work performance evaluations," and noting that he "has not incurred any disciplinary infractions during his term of incarceration").) Even considering his rehabilitation in conjunction with his COVID-19 concerns and sleep apnea, the court finds that they are not extraordinary and compelling reasons for relief. This is particularly true when considering that his crime was a very serious one that involved the discharge of a firearm during a theft and that he has served less than five years of his 138-month sentence.

In short, and given the above reasons, Morris's sleep apnea, the presence of COVID-19, and his rehabilitation, alone or in combination, do not present extraordinary and compelling circumstances in favor of compassionate release.

The court addresses briefly the Fourth Circuit's decision in *Brown*, to which Morris cites in his most recent filing. (Dkt. No. 65.)  Morris's reliance on *Brown* is misplaced.  In *Brown*, the district court had denied the plaintiff's motion for compassionate release, and the Fourth Circuit reversed and remanded with instructions to grant the motion and reduce Brown's sentence.  78 F. 4th at 134.  Morris points to a portion of *Brown* stating that COVID-19 created hardships in prison life not contemplated by the original sentencing court and to a second portion stating that the district court failed to adequately consider the defendant's post-sentencing rehabilitation.

Neither of those issues are relevant here, though.  In *Brown*, the Fourth Circuit actually affirmed that the risk posed by COVID-19 does not create an "extraordinary and compelling" reason for release.  *Id.* at 129–30.  The primary reason the court concluded there could be "extraordinary and compelling" reasons for release were because Brown had been sentenced to a thirty-year mandatory sentence and, if sentenced today, would only be subject to a ten-year mandatory minimum.  *Id.* at 130.  Both portions of that opinion relied upon by Morris were set forth as part of the court's discussion of the § 3553(a) factors.  *See id.* at 132 (discussing the conditions created by COVID-19 as part of its discussion of the overall sentence and whether it provided just punishment or adequate deterrence under § 3553(a)(2)); *id.* at 133 (discussing his rehabilitation efforts in the context of weighing the need for the sentence to protect the public from further crimes by Brown, under § 3553(a)(2)).  Here, by contrast, the court does not reach the § 3553(a) factors because it concludes that there is no extraordinary or compelling reason to even consider a sentence reduction.  Thus, *Brown* is of no assistance to Morris.

## III.  CONCLUSION

Based on the foregoing, it is hereby ORDERED that Morris's motion for leave to file a supplemental brief (Dkt. No. 58) is GRANTED, but his motion for compassionate release (Dkt. No. 53) is DENIED.  The clerk is directed to provide a copy of this memorandum opinion and order to Morris, all counsel of record, and the United States Probation Office.

Entered: September 22, 2023.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge