IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

CLERKS OFFICE US DISTRICT COURT
AT HARRISONBURG, VA
FILED
07/16/2025
LAURA A. AUSTIN, CLERK
BY: /s/ Amy Fansler
    DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 5:19-cr-00015 |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| CARL WILLIAM MORRIS II ) | Chief United States District Judge |

## MEMORANDUM OPINION AND ORDER

Pending before the court is defendant Carl William Morris II's pro se motion seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) and a supplemental motion filed by and through counsel. (Dkt. Nos. 68, 74.) This is Morris's second such motion, and the court denied the first one in September 2023. (Dkt. No. 66.) Morris seeks early release primarily so that he can "receive proper medical care for a series of ongoing health issues . . . that the [Bureau of Prisons] refuses to attend to . . . ." (Dkt. No. 68, at 2.)

The United States opposes relief and has filed a response in opposition (Dkt. No. 79). Morris's counsel has filed both a reply and a supplemental reply, both of which provide updated information regarding Morris's medical conditions. (Dkt. Nos. 82, 85.) The court also has reviewed a letter sent by Morris's sister, with whom he intends to reside upon his release, after completing a year-long rehabilitation program. (Dkt. No. 86.)

For the reasons set forth herein, the motion and supplemental motion will be denied.

I. BACKGROUND

In 2019, Morris pled guilty to one count of Hobbs Act robbery (18 U.S.C. § 1951) and one count of discharging a firearm during and in relation to a crime of violence (18 U.S.C. § 924(c)). He was sentenced to 138 months' incarceration, which consisted of a 120-month sentence on the § 924(c) conviction in Count 2—a mandatory minimum sentence which was required to be imposed consecutive to Count 1—and an 18-month sentence on the § 1951

conviction, which was a downward variance from the guideline range of 27 to 33 months. His current estimated release date is April 2029, so it appears that he has less than four years left to serve of his 11.5-year sentence.

The offenses stem from Morris's conduct on January 18, 2019, when he entered the Martin's grocery store pharmacy located in Winchester, Virginia. Morris approached a pharmacy clerk at the cash register in the pharmacy with a drug test kit to purchase. While the clerk was ringing up the purchase, Morris brandished a firearm, lifting the left side of his front jacket where he had a black handgun tucked in his waistband. Morris directed the clerk to give him "all your pain meds." The clerk complied and handed over multiple bottles of controlled substances, including oxycontin, valued at over $2,000. Morris took four of the bottles and fled the store. Another pharmacy clerk followed Morris out of the store. Upon seeing the clerk, Morris discharged his firearm towards the clerk, but the clerk was unscathed. After firing his weapon, Morris fled into a nearby wooded area where he was tracked by a police canine and apprehended by law enforcement. Police recovered Morris's firearm and the stolen pills. (*See* Statement of Facts, Dkt. No. 35.)

In January 2025, when he filed the pending motion, Morris was in custody at FCC Yazoo City, in Mississippi. His motion, however, asserts that three different Bureau of Prisons (BOP) facilities have provided him with "substandard levels of healthcare." (Mot. 4, Dkt. No. 68.) His motion identifies the following medical issues, which he complains were not properly treated by the BOP:

- sleep apnea, for which the BOP delayed in getting him a sleep study (which was then lost upon his transfer to a new institution), delayed in providing him a CPAP machine, and then delayed in giving him an extension cord so that he could use the machine in his cell, which did not have a power outlet;

- his eyesight, which requires prescription eyeglasses, and for which the BOP delayed in getting him bifocals and refused to replace his glasses when they were damaged,

causing him to experience months of headaches and being unable to see and read, issues that continue to plague him;

- environmental allergies and asthma, for which the medical staff at FCI Cumberland and FCI Fort Dix prescribed him medications, but then upon transfer to FCC Yazoo City, he was denied the medications; relatedly, the BOP facility has black mold and other unspecified "environmental hazards" that are dangerous to him and other inmates;

- a hiatal hernia, for which he was simply told not to exercise and for which he was denied a request for a lower bunk, which has "not [done] any good" for his hernia and has negatively impacted his ability to protect himself against other prisoners;

- difficulty hearing, for which he received a hearing test, but the BOP has not provided him a diagnosis or prescribed treatment, and his inability to hear properly renders him unsafe;

- opiate use disorder (OUD), which he asserts is a disability under the Americans with Disabilities Act, and for which he says treatment is "mandated, not optional," but the BOP has refused to treat his OUD with medication-assisted treatment (MAT), despite his repeated requests for that treatment; and

- recently developed gallstones (cholelithiasis), although his medical records indicate he is asymptomatic and has been referred for a surgical consult (Dkt. No. 82-2).

(Mot. at 4–6 (describing all but the last of the above conditions); Reply 5, Dkt. No. 82 (referring to gall stones); *see also generally* Dkt. No. 79-1 (medical records); Dkt. No. 68-4 through 68-9 (including numerous medical records).)[1]

In the filings through counsel, additional or updated information has been provided concerning some of the medical conditions.[2] In particular, Morris has now received his glasses, as well as "equipment to make the CPAP machine functional." (Suppl. Reply 1.) But counsel also explains that "it took until April of 2025—*after* the filing of [his motion] and potentially an inquiry regarding the matter by the Government—for Mr. Morris to finally receive all the components to make the CPAP machine operable. This is a remarkably long time for a process

---

[1] In general, claims that prison officials have provided inadequate medical care "sound in the Eighth Amendment," *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008), and should be brought—if at all—in a separate civil action, not as part of a compassionate release request.

[2] His sister's letter also mentions that Morris has "chronic bladder issues," which are referenced in Morris's medical records. He does not identify that issue nor ask for relief based on it.

that began in April of 2022." (Reply 4.) Furthermore, both Morris and his sister contend that supposed security requirements related to the CPAP machine—which require him to return the extension cord each morning and obtain it again each night—cause him mental distress, render the machine unavailable during the day for naps, and—because of the limited timing for the return—threaten his prison employment. (Dkt. Nos. 82-1 (Morris statement), 86 (sister's statement).)

The United States opposes Morris's motions. It argues first that Morris has not exhausted his administrative remedies, which Morris disputes in his reply. (Opp'n 2–5, Dkt. No. 79.) It also contends that he has not established extraordinary and compelling circumstances for release and that the 18 U.S.C. § 3553(a) factors do not merit any reduction. (*Id.* at 5–9.)

## II.  DISCUSSION

**A. Compassionate Release Under the First Step Act**

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence under certain circumstances. As amended by the First Step Act and in pertinent part,[3] the statute

> authorizes a court, in its discretion, to reduce a term of imprisonment after it has (1) considered the [18 U.S.C.] § 3553(a) factors for imposing a sentence, (2) found that "extraordinary and compelling reasons warrant such a reduction," and (3) found that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

*United States v. Crawley*, 140 F.4th 165, 169 (4th Cir. 2025) (quoting 18 U.S.C. § 3582(c)(1)(A)); *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024). In 2023, the Commission issued an amended policy statement setting forth a non-exhaustive list of circumstances which may individually or in combination constitute "extraordinary and

---

[3] Prior to the First Step Act of 2018, only the Bureau of Prisons could seek relief in court under the statute. The First Step Act changed the statute to allow a federal inmate to file a motion for compassionate release directly with the court after exhausting his administrative remedies.

compelling" reasons for a sentence reduction.  *See* U.S.S.G. § 1B1.13.  Morris's motion is governed by that policy statement.  *Crawley*, 140 F.4th at 170.

The defendant bears the burden of showing that extraordinary and compelling reasons exist.  *See United States v. Hargrove,* 30 F.4th 189, 195 (4th Cir. 2022) (noting that the inmate provided information "to carry his burden of demonstrating that his medical conditions served as an extraordinary and compelling reason for release").  And "[a] movant for compassionate release bears the burden of showing why the § 3553(a) factors justify a modified sentence." *Centeno-Morales*, 90 F.4th at 279.

**B.  Exhaustion**

Section 3582(c) also requires administrative exhaustion before a defendant may file a motion requesting relief under it, although that requirement is a "'non-jurisdictional claim-processing rule' that can be waived or forfeited if not timely raised." *United States v. Davis*, 99 F.4th 647, 653 n.2 (4th Cir. 2024) (quoting *United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021)).  Specifically, a defendant must request that the BOP bring a motion on his behalf and then either "fully appeal" the BOP's failure to do so or allow 30 days to lapse without a response.  § 3582(c)(1)(A).

Based on the statements in Morris's motion, it appears that he has properly exhausted his administrative remedies.  In particular, he filed a request with the BOP via the warden of his facility, and more than thirty days passed with no response.  (Mot. 4.)  The United States contends that he has failed to exhaust.  It first claims that his letter was primarily a "grievance over the fallout upon BOP learning he was illegally using suboxone," which included his removal from the Residential Substance Abuse Treatment ("RDAP") program.  (Opp'n 4.)  And it asserts that he failed to mention "several of the health issues" that he references in his motion before this court, arguing that those issues are thus unexhausted.  (*Id.*)

As Morris notes in his reply, however, the Fourth Circuit has rejected an issue-based exhaustion requirement. *United States v. Ferguson*, 55 F.4th 262, 268 (4th Cir. 2022). And the record supports that Morris filed a request with the BOP asking that it seek compassionate release on his behalf, with that request including references to his OUD and a lack of MAT for the same, which he contends is a failure to provide required, specialized treatment for his medical condition. (*See* Dkt. No. 68-3.) The court finds that Morris has exhausted his remedies and that his motion is properly before this court.

The court turns next to whether Morris has shown "extraordinary and compelling" circumstances so as to render him eligible for a sentence reduction.

## C. Extraordinary and Compelling Reasons

As previously noted, Morris seeks compassionate release on the basis that he has various health conditions and has not received adequate medical care within the BOP. The Sentencing Guidelines recognize a limited number of circumstances that may constitute "extraordinary and compelling" reasons for compassionate release with regard to a defendant's own health. U.S.S.G. § 1B1.13(b)(1)(B)–(D). In his reply, however, Morris clarifies that he is not seeking relief under subsection (B) or (D).[4] (Reply 6 & n.3.) Instead, he states that he is relying on subsection (b)(1)(C) and (b)(5).

Subsection (b)(1)(C) states that extraordinary and compelling circumstances include where "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C).

---

[4] Subsection (b)(1)(B) includes, as extraordinary and compelling circumstances, where defendant is: (1) suffering from a terminal illness; or (2) suffering from a condition—a serious physical or medical condition, cognitive impairment, or deteriorating physical or mental health because of aging—that "substantially diminishes the [defendant's ability] to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B). Subsection (b)(1)(D) deals with a defendant's increased risk during a disease outbreak or public health emergency. U.S.S.G. § 1B1.13(b)(1)(D).

The second provision on which Morris relies is U.S.S.G. § 1B1.13(b)(5), which states:

> Other Reasons.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

U.S.S.G. § 1B1.13(b)(5).

The parties disagree as to the applicability of both of these provisions. Morris identifies his OUD as a medical condition that requires long-term or specialized medical care (specifically, MAT via suboxone). He maintains that he is not being provided that care and without it, he is at risk of serious deterioration, including possible overdose and even death. Essentially, he explains that he has been seeking and taking suboxone in violation of BOP policies—self-medicating—because he is not permitted MAT, which he states he has been diagnosed as needing.[5] The government counters that he "was terminated from BOP's flagship drug abuse program because he illegally obtained and used drugs while in the program. Now, he argues the active portion of his prison sentence should be over because he is no longer in said program and continues to illegally use drugs while incarcerated." (Opp'n 7–8.) It characterizes his argument as defying logic. (*Id.* at 8.)

Morris also contends that the lack of MAT treatment, in conjunction with all of the other

---

[5] As his counsel acknowledges, however, the medical notes he submitted do not reflect that recommendation for treatment by any health care provider, although they do show his diagnosis as "O.U.D.: severe." (Reply 5–6 (citing Dkt. No. 80-1 at 16, 23).) And in at least one medical note from March 2024, the provider states that Morris "has been cleared by psychology services to participate in MAT/MOUD. He is on the pending list." (Dkt. No. 68-6, at 7.) Even crediting Morris's assertion on that point, though, Morris cites to no cases granting compassionate release on this basis, and other courts have rejected similar requests for early release. *E.g.*, *United States v. Chytka*, No. 1:21CR00009, 2024 WL 3520160, at *2 (W.D. Va. July 24, 2024) ("Many prisoners suffer from addiction to illegal substances, and while the denial of treatment for such addictions may be more appropriate for an Eighth Amendment claim, it does not present an extraordinary circumstance for purposes of compassionate release."); *United States v. Hudson*, No. CR ELH-19-173, 2023 WL 3340066, at *9 (D. Md. May 10, 2023) (concluding that defendant's drug addiction, which was not being treated in the BOP as a result of lockdowns and staff shortages, did not entitle him to a modified sentence allowing him to seek a drug treatment program in the community); *United States v. Shannon*, Case No. 14-CR-6136-FPG, 2021 WL 1807867, at *2 (W.D.N.Y. May 6, 2021) ("[I]t is ultimately up to the BOP to determine whether a defendant qualifies for [a drug rehabilitation or treatment program] . . . This is simply not a basis upon which the Court may grant early release.").

alleged delays in medical treatment, satisfies (b)(5), but the United States argues that his various medical issues do not qualify—either in isolation or considered together—as extraordinary and compelling circumstances. It also notes, as reflected in his voluminous medical records, that he has received medical care, including a CPAP machine for his sleep apnea.

The court need not resolve these disputes, however, because even if Morris were correct and he could show extraordinary and compelling circumstances, the court's consideration of the § 3553(a) factors do not support granting him any relief.

**D.  Section 3553(a) Factors**

Even where a court finds a defendant is *eligible* for compassionate release, the court still must determine whether one is warranted, which requires a consideration of the 18 U.S.C. § 3553(a) factors. *Crawley*, 140 F.4th at 169. Those factors include:

- the nature and circumstances of the offense;
- the history and characteristics of the defendant;
- the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to deter criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational, vocational and other correctional treatment services;
- the kinds of sentences available and the sentencing range for his offense; and
- the need to avoid unwarranted sentence disparities.

18 U.S.C. § 3553(a).

As he argues and as the court recognizes, Morris's own history and characteristics are mostly positive. Prior to this offense, he had no convictions for any violent conduct. He also had very little criminal history overall and his one scored offense was a driving while intoxicated offense that occurred ten years before his offenses here, and which was also likely attributable to his substance abuse issues with alcohol. (Presentence Investigation Report ¶ 25 (describing DWI offense); ¶¶ 36–37 (describing history of substance abuse and treatment).) He maintained stable

employment, including supporting the U.S. military as a defense contractor, and he had close family ties.

Likewise, the disciplinary records before the court, although incomplete, do not indicate any violent offenses, but instead appear related to his substance abuse, such as possessing illegal substances. (*See* Incident Reports, Dkt. No. 68-9, at 3, 10, 16, 18.) His offenses in this case, too, were fueled by his addiction and, by his own account, occurred while he was experiencing symptoms of withdrawal. And as noted by the court at sentencing, the type of violent conduct in which Morris engaged for the offenses were not typical conduct for Morris. Indeed, the court's decision to vary downward from the bottom end of the guideline range on Count 1 was based in part on this being aberrant behavior for him. (*See generally* Statement of Reasons, Dkt. No. 49.) If Morris were able to achieve and maintain sobriety, he is unlikely to commit other crimes and would not otherwise pose a danger to society.

The court also acknowledges both the delays or difficulties Morris has had in obtaining medical treatment, including not being provided his preferred medical treatment for his OUD, and the difficulties of enduring lockdowns in COVID, the loss of his parents while incarcerated, and transfers to facilities "farther and farther away from his loved ones." (Mot. 7.) The court further recognizes that Morris might receive longer, different, or better substance abuse treatment outside of the prison setting. And it commends him and his family for researching treatment options and for being willing to commit to one such program upon his release, as well as for devising what appears to be a stable home plan upon release.

The remaining relevant sentencing factors, however, do not support a reduction in his sentence. Certainly, the nature and circumstances of the offense weigh heavily against any reduction here, as the United States emphasizes. Indeed, even Morris concedes that his "actions and conviction were and are serious." (Suppl. Mot. 7, Dkt. No. 74.) Morris robbed a pharmacy

9

and, in fleeing, discharged a firearm at a store clerk who followed him. Luckily, that clerk was not physically harmed, but the result could have been very different and could have included the death of that individual or an innocent bystander.

Further, both the sentencing range for his offense and the need to avoid unwarranted sentence disparities also support denial of his motion. As noted, Count 2 carried a ten-year mandatory minimum, and with good reason.[6] That mandatory minimum applies only when the firearm is *discharged* during the offense. 18 U.S.C. § 924(c). Simply possessing or carrying the firearm carries a five-year mandatory minimum and brandishing carries a seven-year mandatory minimum. *Id.* Morris has not served even the mandatory minimum for brandishing at this point and releasing him would be inconsistent with the seriousness of his conduct as reflected in the sentence set by Congress. It also would create unwarranted sentencing disparities with others who have committed the same offense and received and served the mandatory minimum sentence.

Additionally, while Morris may not need specific deterrence, a significant sentence is warranted for general deterrence—to prevent armed robberies and especially to prevent the discharge of firearms during them. Again, that is the reason behind the ten-year mandatory minimum if there is a discharge of the firearm. The need to punish and to create respect for the

---

[6] Morris argues that the statutory mandatory minimum of ten years on Count 2, which remains in effect, is no barrier to releasing him, even though it would mean he would have served less than seven of those ten years. (Suppl. Mot. 1–2 (pointing to the language of § 3582(c)(1)(A), which contains no such limiting language, and collecting authority).) *Compare United States v. Halvon*, 26 F.4th 566 (2d Cir. 2022) ("[A] mandatory minimum sentence does not preclude a district court from reducing a term of imprisonment on a motion for compassionate release.") *with United States v. Bricker*, 135 F.4th 427, 447 (6th Cir. 2025) (suggesting that Sentencing Commission would exceed its authority in directing that district courts could ignore a statutory mandatory minimum when granting relief under § 3582(c)). *See also United States v. Osman*, No. 23-6544, 2024 WL 3633573, at *3 n.5 (4th Cir. 2024) (vacating and remanding a release order that reduced a mandatory life sentence to about 13 years but noting that the United States did not challenge on appeal "that a district court could . . . reduce a piracy defendant's sentence below life in prison in a compassionate release proceeding"). *But cf. U.S. v. Gravatt*, 953 F.3d 258, 264 n.5 (4th Cir. 2020) (in context of reducing sentence under Section 404 of the First Step Act, court may not reduce below any applicable statutory minimums). The government does not respond to this argument in its opposition. (*See generally* Opp'n.). Even if Morris is correct (or the United States has conceded the point by not challenging it), the court nonetheless concludes a reduced sentence is not appropriate in light of the § 3553(a) factors.

law are also significant, and a sentence of less than seven years for Morris's offenses would not be sufficient to accomplish that sentencing purpose.

Lastly, the court notes that when it varied downward from the guideline range on Count 1, it did so on the basis of many of the same factors to which Morris points now—that he was suffering from addiction and had a minimal criminal history before that time, that it was aberrant behavior for him, and that he expressed remorse and quickly pled guilty. Because those factors already were considered in imposing his original sentence, an additional reduction is not necessary to account for them.

For the foregoing reasons, the court will deny Morris's motions for a reduced sentence under § 3582(c)(1)(A).

## III. CONCLUSION AND ORDER

For the reasons stated above, it is hereby ORDERED that Morris's motion and supplemental motion (Dkt. Nos. 68, 74) are DENIED. The clerk is directed to provide a copy of this order directly to Morris, to all counsel of record, and to the United States Probation Office.

Entered: July 16, 2025.

*Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge